UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
99 JAN 19 PM 3:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHELLE VANISSA DRIVER,     )
                             )
     Plaintiff,              )
                             )
vs.                          )     Civil Action No. 98-S-1922-NE
                             )
JANIS J. BAILEY; DANIEL      )
WILSON; and BALCH AND BINGHAM,)
LLP,                         )
                             )
     Defendants.             )

ENTERED
JAN 19 1999

## MEMORANDUM OPINION

Plaintiff, Michelle Vanissa Driver, who appears *pro se*, is a former employee of the law firm known as Balch and Bingham, LLP. She alleges that she was "dismissed from her job at Balch and Bingham L.L.P. because of [r]eligious [d]iscrimination."[1] Jurisdiction is premised upon 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e. Her complaint as amended states two claims: (1) religious discrimination in violation of 42 U.S.C. § 1983; and (2) religious discrimination in violation of Title VII.[2] The

---

[1] Complaint (Document No. 1) at (unnumbered page) 4, ¶ 4.

[2] *Id.* at 2, ¶ 3; Amended Complaint (Document No. 5) at ¶ 1. The court notes that plaintiff's original complaint, filed July 28, 1998, only alleged violations of 42 U.S.C. § 1983. Defendants filed an answer on August 17, 1998. (Document No. 4.) Plaintiff then filed an "Amendment to the Complaint" on August 19, 1998, which purported to allege a "violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e." Amended Complaint at ¶ 1. Plaintiff, however, failed to move this court for leave to amend her original complaint pursuant to Rule 15(a) of the *Federal Rules of Civil Procedure*. Despite plaintiff's failure to file a formal motion, defendants did not file a motion to strike plaintiff's amended complaint, but instead filed an "Answer to Amended Complaint" on October 1, 1998. (Document No. 10.) The court therefore will treat plaintiff's complaint as amended and setting forth allegations under Title VII.

action now is before the court on defendants' motion for summary judgment.[3]

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

---

[3] Plaintiff's response to defendants' motion for summary judgment filed December 8, 1998, was entitled "Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment." (Document No. 15.) Although plaintiff entitled her response a "motion," she only moves for a jury trial. Therefore, the court will treat the filing solely as a response to the pending motion for summary judgment. Plaintiff makes the allegation in her response that "the grandson of Mr. Balch himself has been or is the assistant to the Judge that is hearing this very case." (Document No. 15 at ¶ 9.) On the date this action was filed, Bert J. Miano was a law clerk for this court. Mr. Miano, however, is not the grandson of Mr. Balch; he is the son-in-law. Mr. Miano completed his employment with the court shortly after the complaint was filed. He had no contact with this court file. Mr. Miano does not work for Balch and Bingham, LLP, but the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. The court has had no contact with Mr. Miano about this case.

2

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

3

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

With those standards in mind, the court now proceeds to summarize the undisputed facts or, if disputed, to frame them in a light most favorable to plaintiff.

## II. STATEMENT OF FACTS

Michelle Vanissa Driver was employed by the law firm of Balch and Bingham, LLP. Her position "consisted only of answering the phone and registering messages in a computer -- a job so simple that even a child could have done it."[4] She was supervised by Daniel Wilson. Driver's religious affiliation is as a member of "a Pentecostal Holiness" church.[5] Driver claims that she "was told by Mr. Wilson, that she could read any kind of reading material that she wanted to when she was not on the phone."[6] Even so, Driver alleges she "was warned on numerous occasions not to 'read her Bible at work.'"[7]

---

[4] Objection to Defendant's Answer and Request for a Hearing at (unnumbered page) 2, ¶ 14.
[5] *Id.* at ¶ 13.
[6] *Id.* at ¶ 14.
[7] *Id.* at ¶ 13.

4

Driver met with Wilson on March 12, 1998, to discuss personal problems and religious issues she was experiencing. According to Driver, she was informed that these issues would not cause her to be terminated.[8] Notwithstanding Wilson's assurances, Driver was terminated four days later, on March 16, 1998, during a meeting with personnel manager, Janis Bailey, and Gail Perry, legal assistant to Daniel Wilson.[9] Driver had been employed by Balch and Bingham for approximately eight months at the time of her dismissal.[10] Driver claims she was reading her Bible on the day she was fired.[11] Driver alleges the following conversation took place as Bailey and Perry escorted Driver to her car:

> Plaintiff, Michelle Driver, [asked:] "Janis why am I being fired, I do [not] understand; I am 48 years [old] and I have never been fired from a job before. Defendant, Janis Bailey, [replied:] ["]Just gather all your religious material and clean-out your desk." Plaintiff, (on the way down the stairs and out the door with Gail Perry and Janis Bailey, escorting) [again asked Ms. Bailey:] "But Janis, can you give me at least one good reason why I am being fired?" Finally, the plaintiff, Janis Bailey and Gail Perry reached the plaintiff's car; then Janis Bailey says, "Michelle you are a Christian and you know how the Lord works, you are getting fired for a reason, the Lord probably has something better out there for you." Then Plaintiff says, "But this could not come at a worse time, when I need the job the most, and I cannot believe that the Lord would do this to me." Then defendant states, "Well

---

[8] Complaint at (unnumbered page) 2, ¶ 4.

[9] *Id.* at 3, ¶ 4.

[10] *Id.* at 2, ¶ 4.

[11] Objection to Defendant's Answer and Request for a Hearing at (unnumbered page) 2, ¶ 14.

5

>Michelle, you know that the Lord works in mysterious ways
>and this is probably is for your benefit." Then she
>laughed.

(Complaint at (unnumbered pages) 3-4, ¶ 4.)

Driver alleges she was terminated based on religious discrimination. Defendants argue she was terminated because of poor job performance, and claim plaintiff was "counseled on numerous occasions with regard to her job performance and deficiencies in her job performance."[12]

Driver has not filed a formal charge of discrimination with the EEOC. According to Driver, she only contacted the EEOC after filing her complaint in this court. Allegedly she was informed by an unidentified operator that filing a charge with the EEOC was unnecessary, because she already had filed suit in federal court.

### III. DISCUSSION

**A.    Plaintiff's § 1983 Claims**

42 U.S.C. § 1983 provides in part that:

>Every person who, under color of any statute, ordinance,
>regulation, custom, or usage, of any State or Territory
>or the District of Columbia, subjects, or causes to be
>subjected, any citizen of the United States or other
>persons within the jurisdiction thereof to the
>deprivation of any rights, privileges, or immunities
>secured by the Constitution and laws, shall be liable to
>the party injured in an action at law, suit in equity or
>other proper proceeding for redress. . . .

The Eleventh Circuit has set forth the essential requirements for

---

[12] Answer at 3 ¶ 4.

6

a successful § 1983 action: the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See, Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156-57, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Therefore, the critical question before this court is whether the defendants "acted under color of state law or, in the context of the Fourteenth Amendment, whether [the defendants'] alleged actions are 'fairly attributable to the State.'" *Harvey*, 949 F.2d at 1130 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)).

Plaintiff's § 1983 claim ultimately fails because the defendants are not state actors. Plaintiff was employed by a private law firm. None of the conduct by any defendant is attributable to the State of Alabama. "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey*, 949 F.2d at 1130. The record before the court does not establish one of those "rare circumstances."

B. **Plaintiff's Title VII Claim**

  1. **The proper defendant to plaintiff's Title VII claim**

  Plaintiff filed suit against three defendants: Janis J.

7

Bailey; Daniel Wilson; and, Balch and Bingham, LLP. Janis J. Bailey and Daniel Wilson were sued in their individual capacities. The Eleventh Circuit holds, however, that "[i]ndividual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the <u>employer</u>, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)(emphasis in original). The Eleventh Circuit went further in *Busby* to opine: "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* Accord, e.g., *Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). Janis J. Bailey and Daniel Wilson therefore are not proper defendants to plaintiff's Title VII claim and are due to be dismissed.

### 2. Timely filing of an EEOC charge

42 U.S.C. § 2000e-5(e)(1) requires that:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place, and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter ...

Plaintiff was fired on March 16, 1998. She therefore had 180 days

from that date within which to file a charge of discrimination with the EEOC. She did not do so. Instead, she filed suit in this court on July 28, 1998: 134 days after her termination. Plaintiff claims she "contacted [the] EEOC within the specified time frame; but was told by the telephone operator that it would not be necessary for her to file a complaint with that agency, since she already had a case pending in Federal Court ..."[13] This claim by plaintiff was not made until December 8, 1998, 267 days after her termination, in her response to defendants' motion for summary judgment and accompanying affidavit.[14] As of the date of this opinion, plaintiff still has not filed a formal charge with the EEOC.

In *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that "[f]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to

---

[13] Driver Affidavit at ¶ 6.

[14] *See* Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment at ¶ 4. Plaintiff states:

> Plaintiff on or about within the specified time frame called EEOC regarding her claim of religious discrimination against the defendants', and was told by the operator of the telephone that day that she could not file a claim because the case was already filed in court; and that that would be sufficient since both agencies were a branch of the Federal Government; and since her claim was a Federal Question it did not matter about the procedure.

*See also* Driver Affidavit at ¶ 6.

waiver, estoppel and equitable tolling." The Third Circuit set forth the circumstances under which equitable tolling may be appropriate : "1) defendant has actively misled the plaintiff; 2) if the plaintiff has in some extraordinary way been prevented from asserting [her] rights[;] or 3) if the plaintiff has timely asserted [her] rights mistakenly in the wrong forum." *Schafer v. Board of Public Education of the School District of Pittsburgh*, 903 F.2d 243, 251 (3rd Cir. 1990)(citations omitted). "Equitable tolling should not, however, be liberally construed, rather, only under certain circumstances should the doctrine be applied." *Freeman v. CSX Transportation Co., Inc.*, 730 F. Supp. 1084 (M.D. Ala. 1989) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)).

Plaintiff does not allege defendants mislead her to the belief that it was not necessary for her to file a timely EEOC charge.

Plaintiff's allegations regarding the statements attributed to an unidentified EEOC telephone operator[15] correspond to the second circumstance for equitable tolling: "plaintiff has in some extraordinary way been prevented from asserting [her] rights." *Schafer*, 903 F.2d at 251. Equitable tolling has been available when the untimeliness of the charge is due to errors or misleading

---

[15] See note 14 *supra*.

10

statements by EEOC personnel. *See* Lex K. Larson, *Employment Discrimination* § 72.06[7] (2d ed. 1997) (citations omitted). The 180 day limitation period should have been equitably tolled from the date on which plaintiff contacted the EEOC. The rub lies in the fact that plaintiff does not set forth the date on which she contacted the EEOC subsequent to her filing in federal court. The court therefore will consider the date her complaint was filed, July 28, 1998, as the date to begin tolling. As of July 28, 1998, plaintiff had 46 days in which to file her charge with the EEOC.[16]

Yet, plaintiff did not do so, even though she was notified in both of defendants answers that she had not met the prerequisites to maintain the present action.[17] Plaintiff's failure to file an EEOC charge also was cited as a basis for defendants' motion for summary judgment filed on November 20, 1998.[18] Plaintiff therefore was on notice of her need to file an EEOC charge at some point after August 17, 1998, but no later than November 20, 1998. Accordingly, as of November 20, 1998, equitable tolling of the 180

---

[16] The 46 days remaining for plaintiff to file a formal charge with the EEOC was calculated by subtracting the number of days plaintiff filed suit after her termination (134 days) from the 180 day limitation period for filing a charge with the EEOC.

[17] *See* Defendants' Answer at 1, Document No. 4. Defendants' third defense states: "The plaintiff has failed to comply with the prerequisites, whether jurisdictional or otherwise, to the maintenance of this action." *See also* Answer to Amended Complaint at 1, Document No. 10. Defendants' sixth defense states: "the plaintiff has failed to comply with the prerequisites, whether jurisdictional or otherwise, to the maintenance of an action for alleged violations of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e."

[18] Defendants' Motion for Summary Judgment at 2, Document No. 13.

11

limitation period ceased. Plaintiff, therefore, had 46 days from November 20th in which to file a charge with the EEOC.

Notwithstanding the availability of equitable tolling, the Eleventh Circuit has stated:

> [b]efore instituting a Title VII suit in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party within 180 days of the alleged discrimination and must receive statutory notice of the right to sue to respondent named in the charge.

*Jackson, W.C. v. Seaboard Coast Line Railroad, Co.*, 678 F.2d 992, 999 (11th Cir. 1982). The Eleventh Circuit has consistently held that "[t]he filing of a charge of discrimination with the EEOC is a <u>condition precedent</u> to the bringing of a civil action under Title VII." *Increase Minority Participation By Affirmative Change Today of Northwest Florida v. Firestone*, 893 F.2d 1189, 1196 (11th Cir. 1990) (emphasis added) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)); *see also Dent v. St. Louis-San Francisco Railway Co.*, 406 F.2d 399, 403 (5th Cir. 1969); *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357, 359 (7th Cir. 1968); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 497-98 (5th Cir. 1968)). The Middle District of Alabama said in *Ellis v. Wal-Mart Stores, Inc.*, 952 F. Supp. 1513 (M.D. Ala. 1996):

> [b]efore a court may hear a Title VII lawsuit, an aggrieved employee, ... must (1) file a charge of discrimination with the EEOC within 180 days of the

12

alleged acts of discrimination and then must (2) timely institute a lawsuit within ninety days after receiving a right-to-sue letter.

*Id.* at 1519 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973)).

Accordingly, plaintiff's claim of religious discrimination under Title VII is due to be dismissed.

### 3. Discriminatory discharge claim

Even if plaintiff were found to have satisfied the administrative prerequisites for maintaining an action in federal court, she still fails to state a cognizable claim upon which relief can be granted.

Title VII makes it "an unlawful employment practice for an employer ... to discharge any individual ... because of such individual's religion." 42 U.S.C. § 2000e-2. "A plaintiff in a Title VII religious discrimination action has two legal theories available for the prosecution of [her] claims: 'disparate treatment' and 'failure to accommodate.'" *Breech v. Alabama Power Company*, 962 F. Supp. 1447, 1456 (S.D. Ala. 1997). Plaintiff herein purports to seek relief under the disparate treatment theory. To succeed under such a theory, plaintiff "must show that [her] employer treated [her] differently than other employees because of [her] religious beliefs." *Id.* (citing *Chalmers v. Tulon Company of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996); 42 U.S.C.

13

§ 2000e-2(a)(1)). "The evidentiary burdens placed on the employee under this theory mirror those placed on employees alleging employment discrimination based on race or sex." *Chalmer*, 101 F.3d at 1017.

Thus, plaintiff may establish a *prima facie* case of religious discrimination by direct evidence, when available, or indirect evidence, utilizing the evidentiary framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and elaborated in its progeny. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, a plaintiff must establish a *prima facie* case. If a plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to defendants to rebut the presumption of intentional discrimination thus raised by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendants do so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendants' stated reasons merely are pretext for unlawful, discriminatory motives. *Id.*

14

Adapting the *prima facie* elements of a race or gender discrimination claim to the present allegations of religious discrimination, plaintiff must prove the following to establish a *prima facie* case of discriminatory discharge:

> (1) that [she] is a member of and/or practices a particular religion, (2) that [she] was qualified for the job from which [she] was discharged, (3) that [she] was discharged, and (4) that [her] former position was filled by a person of a different religion or a person of no religion at all. ... Alternatively, [plaintiff] may satisfy the fourth requirement by showing that [she] was terminated while others having comparable or lesser qualifications and not of [her] religion were retained, or that [she] suffered from differential application of work or disciplinary rules.

*Breech*, 962 F. Supp. at 1457 (citations omitted). The second alternative showing -- that plaintiff suffered from differential application of work or disciplinary rules -- is appropriate in the present action, because it is the only showing that plaintiff attempted.

Plaintiff satisfies the first three elements of her *prima facie* case: she is a member of a Pentecostal Holiness church, she was qualified for her job, and was discharged. Plaintiff has not, however, satisfied the fourth requirement. Plaintiff attempted to make this showing in two court filings, neither of which were submitted in opposition to defendants' motion for summary judgment: Plaintiff's Complaint (Document No. 1); and Objection to Defendant's Answer and Request for a Hearing (Document No. 6).

15

Plaintiff sets forth in her complaint a purported conversation between herself, Janis Bailey, and Gail Perry on the date she was terminated.[19] In her objections to defendant's answer and request for a hearing, plaintiff alleges she:

> was told by Mr. Wilson, that she could read any kind of reading material that she wanted to when she was not on the phone. But, plaintiff was denied (or at least they objected to her reading the Bible at work -- even though that was almost the only book she had to read -- other than her Sunday School Lesson. Plaintiff was reading the Bible the day she was 'fired.'[20]

Plaintiff further alleges she "was warned on numerous occasions not to 'read her Bible at work'; however, she shared a split-shift with another employee and that employee was allowed to read her school books without reprimand."[21]

This evidence is deficient for several reasons, the most important being that these statements amount to nothing more than conclusory allegations by the plaintiff. Plaintiff is required to offer more than conclusory allegations to establish a prima facie case. See *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376-77 (11th Cir. 1996). The statements also are not probative as to whether plaintiff was subjected to differential application of work or disciplinary rules because she does not allege which rules were

---

[19] See note 10 and related text *supra*.

[20] Objection to Defendants' Answer and Request for a Hearing at (unnumbered pages) 2 ¶ 14.

[21] *Id.* at ¶ 13.

16

differentially applied. Plaintiff has thus failed to establish a *prima facie* case of discriminatory discharge under the disparate treatment theory.

Because plaintiff failed to establish a *prima facie* case of religious discrimination, defendants need not proffer any valid reasons for its actions. *See Breech*, 962 F. Supp. at 1457; *see also Hawkins v. Ceco Corp.*, 883 F.2d 977, 981 (11th Cir. 1989). Defendants, nevertheless, present the argument that plaintiff was terminated based on her poor job performance and claim she was "counseled on numerous occasions with regard to her job performance and deficiencies in her job performance."[22] Plaintiff never came forth with evidence demonstrating that her termination was motivated by unlawful discriminatory intent, nor did she attempt to show that defendant's proffered explanation was pretextual. Thus, defendants' motion for summary judgment as to plaintiff's Title VII claim is also due to be granted.

An appropriate order consistent with this memorandum opinion will be issued contemporaneously herewith.

DONE this 19th day of January, 1999.

United States District Judge

---

[22] See note 12 *supra*.